UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-20332-BLOOM

MANUEL BALBIN,

    Plaintiff,

v.

SGT. J. LATIN, *et al.*,

    Defendants.

                              /

## SCREENING ORDER

**THIS CAUSE** is before the Court on *pro se* Plaintiff Manuel Balbin's *pro se* civil rights complaint filed under 42 U.S.C. ("Complaint"), ECF No. [1]. Plaintiff alleges violations of his constitutional rights arising from his confinement while a pre-trial detainee at the Pretrial Detention Center ("PDC") in Miami-Dade County. *See generally id.* For the reasons set out below, this action shall proceed as to Plaintiff's individual capacity claims of failure to protect against Defendants Sergeant J. Latin, Corporal C. McGahee, Lieutenant Wooden, and Corrections Officer Williams; this action shall be dismissed as to Plaintiff's individual capacity failure to protect claims against Defendants Corporal D. Labri, Captain Daniel Junior, Miami-Dade County Mayor Daniella Levine Cava, and Miami-Dade County Board of Commissioners; this action shall be dismissed as to the fictitious party Defendants, the unknown PDC Corrections Officers and the unknown Jackson Memorial Hospital Doctor; and this action shall be dismissed as to Plaintiff's official capacity failure to protect claims against all Defendants.

## I.  BACKGROUND

Plaintiff's allegations take place during August 2021 when he was a detainee confined at PDC. ECF No. [1] at 17-26. On August 5, 2021, Plaintiff was housed in Wing C on the 8th floor

when another detainee "made unwanted sexual advances towards [him]." *Id.* at 18 (alteration added). Plaintiff reported the incident and filed a Prison Rape Elimination Act ("PREA") complaint. Following the PREA incident, Plaintiff was re-housed alone in a "Safety Cell" in an adjacent wing, Wing A, on the same floor. *Id.* He was made to wear a red uniform to indicate that he should be "locked down 24/7 [and] restricted from having any physical contact with other detainees." *Id.* (alteration added). Plaintiff states that because Wing A was adjacent to Wing C, the move did not protect him because word of the PREA incident quickly spread to Wing A. *Id.* Plaintiff filed a grievance requesting to be moved to a different location but, "due to quarantine [protocol]" his request was not honored. *Id.* (alteration added).

On August 16, 2021, during weekly rounds, Corporal C. McGahee and Lieutenant Wooden entered Plaintiff's cell (Room 5). *Id.* Plaintiff told them that he was in fear for his life because detainees in neighboring cells (Rooms 1, 2, and 3), had heard about the PREA incident and were threatening to stab and kill him in the "yard or anywhere they could." *Id.* at 18-19. McGahee responded, "I know white boys are soft, you got to be tough though," and Wooden stated, "[t]he most that can happen is a fight." *Id.* at 19 (alteration added).

On August 18, 2021, Plaintiff filed an emergency inmate grievance reporting the threat of serious bodily harm. *Id.* In the grievance, he wrote that he believed the threats were serious because one of the other detainees previously stabbed another detainee in the yard. *Id.* Per PDC procedures, the emergency grievance was hand-delivered to Sergeant J. Latin. *Id.* However, no actions were taken to protect Plaintiff from the specifically identified harm. *Id.*

The morning of August 20, 2021, Plaintiff made several attempts to alert PDC staff that he was in imminent danger of being attacked. At 7:30 AM, Plaintiff told Corporal D. Labri that during recreation time, he must go to the yard alone "because room 1, 2, [and] 3 want to stab [and] kill me." *Id.* at 20 (alterations added). In response, Labri stated, "[w]hatever[.]" *Id.* (alterations added).

At 8:50 AM, two unknown corrections officers, described only as Black males, came to Plaintiff's cell and instructed him that they needed to relocate him temporarily in order to fumigate his cell. *Id.* Plaintiff told the corrections officers that he could not leave his cell "because the inmates that are trying to kill me are in the yard right now[.]" *Id.* (alteration added). The corrections officers told him that he would be safe because they would put him in a holding cell while the fumigation was performed. *Id.* They said the fumigation would not take long and they would return him to his cell as soon as it was finished. *Id.* The corrections officers moved Plaintiff to the holding cell where he remained for 40 minutes.

He states that after the fumigation was complete, he begged the corrections officers to return him to his cell but they took no action. *Id.* Corrections Officer Williams was also present and witnessed Plaintiff in the holding cell. Plaintiff screamed to Williams that he needed to go back to his cell. *Id.* at 21. "I can't be here when they come back from the yard, they're trying to kill me!" *Id.* Williams ignored Plaintiff's pleas. *Id.*

At 9:30 AM, the five detainees Plaintiff had warned about returned from the yard and saw Plaintiff through the glass of the holding cell. *Id.* Plaintiff screamed for help but the detainees opened the holding cell and proceeded to physically and sexually assault Plaintiff. *Id.* Plaintiff was cut with a knife in the eye, arm, and leg. *Id.* at 21-22. He also sustained bruising to his body and face. *Id.* at 22. He was taken to the PDC clinic where he had a seizure due to brain damage from the assault. *Id.* at 22. Plaintiff was then transported to Jackson Memorial Hospital ("JMH") in an ambulance for treatment. *Id.* at 22.

Once at JMH, an unknown female doctor at JMH treated Plaintiff. Plaintiff immediately told the doctor that she needed to call the police because he had been sexually battered and the attack had been an attempt to murder him. *Id.* The doctor refused to call the police and told Plaintiff, "We don't do that here, what we do here is treat you for your wounds." *Id.* Plaintiff

insisted that he needed police officers to document his wounds while they were still fresh because he feared that PDC corrections officers were trying to cover up the attack. *Id.* The doctor again refused and prevented Plaintiff from calling the police during the four-day duration of his hospital stay. *Id.* Additionally, the doctor failed to report the sexual battery to JMH's rape treatment center. *Id.*

Plaintiff states that the holding cell where he was attacked had an "unsecure latch" instead of a lock and key apparatus. *Id.* at 24. He alleges that all of the holding cells on floors 2 through 10 had these same latches. *Id.* He states that Captain Daniel Junior regularly made rounds through PDC and observed the "unsecure [holding cell] latches" but never ordered them to be fixed or replaced. *Id.* (alteration added). Additionally, Plaintiff alleges that Miami-Dade County Mayor Daniella Levine Cava and the Miami-Dade County Board of Commissioners had knowledge of the "unsafe and unsecure latches" because they approved of PDC's building and construction but failed to fix or replace the latches. *Id.* at 24.

As a result of the attack, Plaintiff received four face fractures, a fractured jaw, several stab wounds, and nerve damage in his left eyelid. *Id.* at 26. He suffers from seizures, memory loss, headaches, and ongoing severe pain. *Id.* He also suffers from Post-Traumatic Stress Disorder and experiences nightmares, depression, shame, anxiety, and feelings of worthlessness. *Id.* Plaintiff seeks compensatory and punitive damages as well as injunctive relief to have the PDC holding cell latches replaced. *Id.*

## II.   STANDARD OF REVIEW

Plaintiff has been granted permission to proceed in forma pauperis ("IFP") and is therefore subject to the screening provisions of 28 U.S.C. § 1915(e)(2). *See Farese v. Scherer*, 342 F.3d 1223, 1228 (11th Cir. 2003). Pursuant to 28 U.S.C. § 1915(e)(2), a case is subject to dismissal if a court determines the action is: (1) "frivolous or malicious," (2) "fails to state a claim on which

relief may be granted," or (3) "seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

To state a claim for relief under § 1983, Plaintiff must show that he was deprived of a federal right by a person acting under color of state law. *See Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). In order to "avoid dismissal for failure to state a claim, a complaint must contain factual allegations that, when accepted as true, allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Wright v. Miranda*, 740 F. App'x 692, 694 (11th Cir. 2018) (citing *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017) (per curiam). Although a *pro se* pleading is liberally construed, it must still "suggest that there is some factual support for a claim." *Id.* (citations omitted). Thus, the allegations in a complaint require more than mere labels and legal conclusions. *See Quality Auto Painting Center of Roselle, Inc. v. State Farm Indemnity Co.*, 917 F.3d 1249, 1262 (11th Cir. 2019). However, a district court is not required to "rewrite an otherwise deficient pleading in order to sustain an action." *Rodriguez v. Scott,* 775 F. App'x 599, 603 (11th Cir. 2019) (per curiam) (quoting *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1169 (11th Cir. 2014).

### III. DISCUSSION

**A.  Fictitious Party Pleading**

    **i.  Two Unknown Corrections Officers and Unknown Jackson Memorial Hospital Doctor**

"As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citation omitted). Courts allow fictitious party pleading only where the plaintiff has "adequately described the person to be sued so that the person [can] be identified for service." *Dean v. Barber*, 951 F.2d 1210, 1215 n.6 (11th Cir. 1992). At this juncture, the Plaintiff has not provided sufficient information regarding the identities of the three unnamed defendants, the unknown PDC Corrections Officers, and the

5

unknown Jackson Memorial Hospital Doctor, so that they could be identified for service. Accordingly, the Plaintiff's claims against the unnamed Defendants are dismissed without prejudice. If the case proceeds to discovery and Plaintiff discovers their identities, he may then seek leave to file a proper amended complaint.

**B.    Deliberate Indifference/Failure to Protect – Individual Capacity Claims**

Based on the allegations, which must be construed liberally at this preliminary stage, Plaintiff raises individual capacity failure to protect claims against all named Defendants. *See generally* ECF No. [1]. "Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted). "A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Fourteenth Amendment." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003)). A deliberate indifference claim thus consists of three elements: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). To satisfy the subjective component, a plaintiff must allege facts that would allow a jury to conclude that the defendant actually knew that the plaintiff faced a substantial risk of serious harm. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2015). To satisfy the objective component, a plaintiff must allege facts showing that the defendant disregarded that known risk by failing to respond to it in an objectively reasonable manner. *See id.*

As to the first prong, "inmate-on-inmate violence can amount to serious harm." *Scott v. Miami-Dade Cty.*, 657 F. App'x 877, 881 (11th Cir. 2016) (citations omitted). "[A]n excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm." *Purcell ex rel*

6

*Estate of Morgan v. Toombs Cty.*, 400 F.3d 1313, 1320 (11th Cir. 2005) (alteration added). Where a plaintiff has previously been attacked, "[t]he fact of an earlier attack ma[kes] the ongoing threats credible." *Scott*, 657 F. App'x at 881 (alterations added). Here, the Plaintiff states that fifteen days before the attack he had a separate PREA incident where another detainee made unwanted sexual advances toward him. ECF No. [1] at 18. The Plaintiff reported the activity and was subsequently transferred to a different wing of the jail, housed alone in a "safety cell," made to wear a red uniform to indicate his status, and restricted from having any physical contact with other detainees. *Id.* However, the new "safety cell" was in a wing adjacent to the one he had previously been housed in, which allowed for "word to spread" regarding the previous PREA incident to detainees in Plaintiff's new wing. *Id.* Five detainees in Plaintiff's new wing heard about the PREA incident and began verbal threats to seriously injure or kill Plaintiff" *Id.* at 19. On these facts, Plaintiff plausibly alleged a substantial risk of serious harm. The Court will proceed to analyze the remaining elements of a failure to protect claim as to each individual defendant.

   **i. Corporal C. McGahee and Lieutenant Wooden**

Plaintiff has plausibly stated a claim of failure to protect against Defendants McGahee and Wooden. Plaintiff alleges that Defendant McGahee was the corporal in charge of all "Safety Cell" detainees on the 8th floor. ECF No. [1] at 14. Defendant Wooden was the lieutenant in charge of all "Safety Cell" inmates and also served as Defendant McGahee's supervisor. *Id.* at 15. He explains that "[a] safety cell detainee is suppose[d] to be safe, because he is isolated from general population, locked down in a cell alone, . . . [and] dressed in [a] red uniform rather than orange." *Id.* at 14-15 (alterations added). At the time he was attacked, Plaintiff was a "safety cell" detainee on the 8th floor, he was housed alone, and he wore a red uniform. *Id.* at 17-18.

On August 16, 2021, Plaintiff states that Defendants McGahee and Wooden entered his cell during their weekly rounds. *Id.* at 18. Plaintiff verbally informed both Defendants that he "was

7

in fear for his life" because five detainees in neighboring cells within his wing found out about the PREA incident that occurred in the adjacent wing. *Id.* at 18-19. "[A]s a result, those detainees were now making serious threats to kill Pla[intiff] by stabbing him, [and] also threatening to rape Pla[intiff], [and] that they would catch Pla[intiff] in [the] yard or any where they could." *Id.* at 19 (alterations added). Defendant McGahee responded by telling Plaintiff, "I know white boys are soft, you got to be tough though[.]" *Id.* at 19 (alteration added). Defendant Wooden stated that "[t]he most that can happen is a fight." *Id.* (alteration added).

Plaintiff has plausibly alleged that Defendants McGahee and Wooden were aware of the substantial threat of serious harm he faced—namely, that detainees in Plaintiff's wing had learned about his PREA incident and were making serious threats to attack him. Additionally, after Plaintiff informed McGahee and Wooden that he feared an imminent attack from specific inmates, both defendants made statements acknowledging that the risk was legitimate but failed to respond in an objectively reasonable manner. As to McGahee and Wooden, Plaintiff's individual capacity failure to protect claim shall proceed.

    **ii.    Sergeant J. Latin**

Plaintiff has plausibly stated a claim of failure to protect against Defendant J. Latin. Plaintiff alleges that Latin was a sergeant at PDC and served as shift commander. *Id.* at 14. As part of that role, whenever a detainee is in imminent danger, Latin was informed, and it was his "job to protect the detainee by taking any necessary measures[.]" *Id.* (alteration added). On August 18, 2021, Plaintiff filed an emergency grievance stating that four of the other detainees in his wing were making threats of violence against him. *Id.* at 19; *see* ECF No. [1] at 2-4. Specifically, the other detainees threatened to stab Plaintiff when he was in the yard and he believed these threats were serious because one of the detainees had previously stabbed an inmate in the yard. *Id.* The emergency grievance was "hand-delivered to the shift commander Sergeant J. Latin at PTDC on

[August 18, 2021] at approximately 3:20pm by the floor counselor." ECF No. [1-1] at 3. Despite having this information, Latin "did nothing" and two days later, the detainees identified in the emergency grievance attacked Plaintiff. ECF No. [1] at 19. Plaintiff has plausibly alleged that Latin had subjective awareness of the imminent threats of physical violence made against Plaintiff. Plaintiff's individual capacity failure to protect claim against Latin shall proceed.

  **iii. Corporal D. Labri**

Plaintiff has not stated a plausible failure to protect claim against Defendant D. Labri. Plaintiff alleges that Labri was a corporal at Turner Guilford Knight Corrctional Center, but on August 20, 2021, the day Plaintiff was attacked, Labri was working at PDC. *Id.* at 15. At 7:30 AM, Plaintiff informed Labri that when he went to the yard he needed to go alone because the detainees in rooms 1, 2, and 3 of the wing "want to stab [and] kill [him]." *Id.* at 20 (alterations added). Labri replied, "[W]hatever." *Id.* (alteration added). Although Plaintiff alleges that was subjectively aware of the threats of physical violence made against Plaintiff, he has not alleged that Labri was deliberately indifferent to those threats. Plaintiff told Labri that when he went to the yard he needed to go alone, but Plaintiff does not allege that on the day of the attack he went to the yard alone or otherwise. To summarize the allegations, Plaintiff made Labri aware of an ongoing threat of serious harm, a way to prevent said threat, and all facts indicate that Labri adhered to Plaintiff's recommendations. On these facts, Plaintiff's individual capacity failure to protect claim against Labri shall be dismissed.

  **iv. Corrections Officer Williams**

Plaintiff has plausibly stated a claim of failure to protect against Defendant Williams. Plaintiff alleges that Williams was a corrections officer on the 8th floor of PDC. *Id.* at 15. Forty minutes prior to the attack, two unnamed officers placed Plaintiff in a holding cell in order to fumigate his cell. *Id.* at 20. While in the holding cell, Plaintiff screamed to Williams, "Yo Will, I

need to go back to my cell, I can't be here when they come back from yard, they're trying to kill me!" *Id.* at 21. Williams took no action and shortly thereafter, while still in the holding cell, Plaintiff was attacked by other detainees. Plaintiff has plausibly alleged that Williams actually knew that if Plaintiff was left in the holding cell, he faced a substantial risk of serious harm. Plaintiff's individual capacity failure to protect claim against Latin shall proceed.

C.     **Deliberate Indifference/Failure to Protect – Supervisor Liability**

It is well settled that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *Barr v. Gee*, 437 F. App'x 865, 875 (11th Cir. 2011) (quoting *West v. Tillman*, 496 F.3d 1321, 1328 (11th Cir. 2007)). A supervisor can only be held liable under § 1983 if he "personally participated in the allegedly unconstitutional conduct or if there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." *West*, 496 F.3d at 1328 (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quotations omitted)).

To state a supervisory liability claim, the plaintiff must allege: (1) the personal involvement of the supervisor in the violation of the plaintiff's constitutional rights, (2) the existence of either a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts that support an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged constitutional deprivation that he then failed to correct. *See West*, 496 F.3d at 1328-29 (listing factors in context of summary judgment). However, a supervisor is not liable under § 1983 for mere negligence in the training or supervision of his employees. *Greason v. Kemp*, 891 F.2d 829, 836-37 (11th Cir. 1990). The mere fact a defendant occupies a supervisory position is not enough; rather Plaintiff must "show that the supervisor either participated directly in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged

constitutional violation." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation omitted).

### i. Director Daniel Junior

Plaintiff has not stated a plausible failure to protect claim against Defendant Daniel Junior. Plaintiff alleges that Junior is the director of the Miami-Dade County Corrections and Rehabilitation. *Id.* at 16. As director, Junior is tasked with making sure all MDCR facilities, including PDC, are safe and secure. *Id.* Unlike the holding cells at other MDCR facilities that are secured by lock and key, all of the holding cells on floors 2 through 10 of PDC have latches. *Id.* at 24. Junior is aware of the latches on the holding cells because he regularly makes rounds at PDC and personally "sees unsecure latches." *Id.* However, Junior has never made any efforts to secure the latches or replace them with a key lock. *Id.* Plaintiff alleges that "if the holding cells had key locks, Pla[intiff's] attackers would of never been able to gain entry into Pla[intiff's] holding cell." *Id.* (alterations added).

As to Junior, Plaintiff's allegations of substantial risk of harm are of a different degree. Plaintiff does not allege that Junior was aware that other detainees threatened to harm Plaintiff. "In general, a plaintiff must show more than a generalized awareness of risk to make out a deliberate-indifference claim." *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019) (citation and internal quotation marks omitted). "To establish deliberate indifference based on a generalized risk, the plaintiff must show that serious inmate-on-inmate violence was the norm or something close to it." *Id.* (citation and internal quotation marks omitted); *see also Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1583 (11th Cir. 1995) (plaintiff faced substantial risk of serious harm when fights causing injuries requiring medical attention and hospitalization regularly occurred between inmates).

Here, Plaintiff alleges that Junior had personal knowledge that the holding cells at PDC

had latches. As to Junior, Plaintiff's allegations merely state that he was aware that the latches on the holding cells posed a generalized risk. These allegations are insufficient to support that Junior had personal knowledge that Plaintiff faced a substantial risk of serious harm. Nor has Plaintiff alleged the existence of a custom or policy or any facts to support an inference that Junior directed unlawful actions against Plaintiff. Although Plaintiff characterizes the latches on holding cells as "unsecure," his allegations do not give rise to any "widespread history of abuse" caused by the latches. Accordingly, Plaintiff's individual capacity failure to protect claim against Junior shall be dismissed.

    ii.    **Miami-Dade County Mayor Daniella Levine Cava and Miami-Dade County Board of Commissioners**

Plaintiff has not stated a plausible failure to protect claim against Defendants Miami-Dade County Mayor Daniella Levine Cava and Miami-Dade County Board of Commissioners. Plaintiff alleges that in 1959, PDC's construction was completed. *Id.* As early as 1998, all of the holding cells on floors 2 through 10 were secured by latches. *Id.* Plaintiff alleges that because the Mayor and the Board of Commissioners approved the construction and building plans for PDC, "these Def[endants] have direct knowledge of the unsafe [and] unsecure latches, [and] they are responsible for never updating [the latches]." *Id.* (alterations added).

Plaintiff's allegations against the Miami-Dade County Defendants are conclusory. The fact that over 60 years ago, Miami-Dade County entities approved the construction of PDC does not constitute any significant causal connection between the Defendants and the risk of serious harm Plaintiff faced from threats of physical violence. Additionally, Plaintiff has not alleged any other basis for supervisor liability. Thus, Plaintiff's individual capacity claims against Mayor Daniella Levine Cava and the Board of Commissioners shall be dismissed.

**D.    Official Capacity Claims**

Plaintiff alleges official capacity claims against all Defendants. "[O]fficial-capacity suits

generally represent only another way of pleading an action against an entity of which an officer is an agent[.] . . ." *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 691 n.55 (1978). "Such suits against municipal officers are therefore, in actuality, suits directly against the [municipality] that the officer represents." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (citing cases). Therefore, Plaintiff's official-capacity claims against Defendants are really claims against Miami-Dade County, and should be treated as such.

Regarding Miami-Dade County, "[a] municipality may be held liable under § 1983 if the plaintiff shows that a 'custom' or 'policy' of the municipality was the 'moving force' behind the constitutional deprivation." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (quoting *Monell*, 436 U.S. at 690-94). "A plaintiff . . . has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cty.*, 335 F.3d 1326, 1329-30 (11th Cir. 2003) (en banc). However, "an inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred." *See Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996).

Here, Plaintiff has stated a facially plausible failure to protect claims against McGahee, Wooden, Latin, and Williams. All the same, he has not meaningfully alleged the existence of an officially promulgated Miami-Dade County policy that was the moving force behind their alleged failure to protect. Nor has he meaningfully alleged the existence of a custom or practice through the repeated acts of a final policymaker for Miami-Dade County that was the moving force behind the alleged failure to protect. Thus, Plaintiff has not stated a cognizable *Monell* claim against Miami-Dade County.

Accordingly, it **is ORDERED AND ADJUDGED** as follows:

1.   Plaintiff's individual capacity failure to protect claims against Sergeant J. Latin,

Case No. 22-cv-20332-BLOOM

Corporal C. McGahee, Lieutenant Wooden, and Corrections Officer Williams **SHALL PROCEED**.

2. Plaintiff's claims for injunctive relief and individual capacity failure to protect claims against Corporal D. Labri, Captain Daniel Junior, Miami-Dade County Mayor Daniella Levine Cava, and Miami-Dade County Board of Commissioners **SHALL BE DISMISSED**.

3. Plaintiff's official capacity failure to protect claims against all Defendants **SHALL BE DISMISSED**.

4. Plaintiff's claims against the fictitious party Defendants, the unknown PDC Corrections Officers, and the unknown Jackson Memorial Hospital Doctor, **SHALL BE DISMISSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 9, 2022.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Manuel Balbin, *Pro Se*
#B05748
South Florida Reception Center
Inmate Mail/Parcels
14000 NW 41st Street
Doral, FL 33178